IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


PEGGY NICOLL,

      Plaintiff,

vs.                                            No.  10cv0768 DJS

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION,

      Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Opposed Motion to Dismiss Complaint and Memorandum in Support **[Doc. No. 13]**, filed on November 4, 2010, and fully briefed on December 8, 2010.  Defendant contends the Court lacks jurisdiction over this matter under section 205(g).  Accordingly, Defendant moves the Court for an order of dismissal. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is not well taken and will be **DENIED.**

### I.  Background

Plaintiff filed an application for disability benefits and survivor's benefits and completed the initial steps of the process with assistance from her sister.  On November 19, 2008, her claim was denied.  Although Plaintiff received notice of the denial of benefits, she claims she failed to take action due to ongoing severe cognitive impairments and because she had no one to assist her with the appeal.

On July 16, 2009, Plaintiff went to the Social Security Office and requested a hearing. Although Plaintiff's request for hearing was accepted, no one at the agency requested or directed Plaintiff to submit a "good cause" statement.

On July 29, 2009, the Social Security's hearings office sent a letter to Plaintiff explaining the hearing process. Plaintiff contends that she understood the letter to mean that her request was being processed. During the same time period, Matt Hill, an employee from the district office, called Plaintiff and informed her that a good cause statement was needed because she had untimely filed her request for a hearing. On **August 5, 2009**, Plaintiff's therapist helped her complete a good cause statement. The good cause statement was entered into the system on August 10, 2009, and stated:

> This letter is a statement of explanation as to why I was late filing my appeal for both SSD and Survivor's Benefits. As in previous statements, I am identifying both memory loss and memory lapses that interfere with my ability to function independently as reasons for my lateness.

Pl.'s Resp.; Ex. A.

Meanwhile, on **August 3, 2009**, Chief Administrative Law (ALJ) Judge Morris submitted a request to ALJ Upshall asking that ALJ Upshall review the file for possible dismissal based on untimely filing. On **August 4, 2009**, Judge Upshall signed a statement that good cause was not found. *Id.*; Ex. B.

Plaintiff argues that ALJ Upshall had not received her good cause statement when he signed the statement that good cause was not found. Plaintiff contends that at no time did the hearings office notify her of the need for a good cause statement or that there was a problem with her case. Plaintiff also contends the request for review for dismissal on the basis of untimeliness was generated by the district office rather than hearings office.

On September 24, 2009, Plaintiff retained counsel. At that time, Plaintiff had already received the Office of Disability Adjudication and Review acknowledgment for her request for hearing. There was no indication that there was a problem with her case. Thereafter, Plaintiff's counsel received a disability case document index from the hearings office dated October 14, 2009. Pl.'s Resp.; Ex. C. The index reflects the August 3, 2009 request for review to Judge Upshall and Plaintiff's August 5, 2009 good cause statement.

Plaintiff's counsel thereafter received a "Notice of Dismissal" dated November 24, 2009. Counsel timely filed an appeal to the Appeals Council and also filed a subsequent claim. Plaintiff was approved at the initial level on the subsequent claim. Plaintiff was approved for disability benefits beginning May 2010 and was approved for widow's benefits beginning December 2009. *Id.*; Ex. D.

Plaintiff filed the present claim on April 15, 2008 and is for a period of benefits beginning with claimant's alleged onset date of November 15, 2007. Plaintiff contends that her entitlement to benefits from November 2007 until May 2010 has never been properly adjudicated as a result of the ALJ's improper dismissal of her claim.

## II.  Discussion

Defendant contends the Court does not have jurisdiction under section 205(g), which authorizes judicial review in cases arising under Title II and XVI of the Social Security Act. Section 205(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such a decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. §405(g).  Defendant contends that since the ALJ did not issue a decision after a hearing, the court lacks jurisdiction.  Defendant also contends Plaintiff has not exhausted her administrative remedies and requests the Court dismiss her complaint.  However, Defendant failed to set forth what other "administrative step" is left for Plaintiff to exhaust.  In this case, Plaintiff has completed all administrative procedures and exhausted all administrative remedies.

In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980 (1977), the Supreme Court construed section 205(g) to limit "judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.' " *Id.* at 108, 97 S.Ct. at 985.  In *Sanders* the petitioner sought review of the Secretary's decision not to reopen a previously denied application for disability payments.  Because a petition to reopen a prior final decision could be denied without a hearing, the Court held that the language of section 205(g) precluded judicial review of the Secretary's decision. *Id*.

The Tenth Circuit has applied *Sanders* to preclude a district court's review of the Commissioner's dismissal of a claim without a hearing due to the claimant's unexcused failure to appear at a hearing.  *Kiiker v. Astrue*, 364 Fed.Appx. 408 (10th Cir. 2010).  Similarly, in the instant action the Commissioner was not required to grant a hearing because Plaintiff's request for a hearing was untimely filed.  Accordingly, the Court is precluded by the language of section 205(g) from relying on that provision for jurisdiction to review the Commissioner's decision.

However, the Court in *Sanders* recognized that section 205(g) did not act as a bar to resolution of constitutional questions raised by a claimant when seeking review of the Commissioner's decision. *Sanders,* 430 U.S. at 109, 97 S.Ct. at 986.  "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Id*.  Thus, the Court held that judicial

review was proper where the Commissioner's decision to deny or discontinue social security benefits is challenged on constitutional grounds notwithstanding the absence of a prior administrative hearing.

In the instant case, Plaintiff contends she does not seek adjudication of the merits of her disability claim for her entitlement to benefits from November 2007 until May 2010. Plaintiff also makes clear that she does not seek a determination as to her mental capacity. Rather, she seeks a remand to allow the Commissioner to correct his mistake. To support her position, Plaintiff cites to a September 29, 2010 memorandum authored by the Chief Administrative Law Judge and distributed to all Regional Chief Administrative Law Judges. In this memorandum, the Chief Administrative Law Judge set forth "REMINDERS." One of these "REMINDERS" states:

> While the field office may develop the issue of good cause for untimely filing of a Request for Hearing, the hearing office should follow up on this issue if nothing in the claim file exists to indicate the reason for the late filing. A copy of any communication should be associated with the file as an exhibit to document the hearing's office's attempts to collect the information. HALLEX I-2-0-60.

Pl.'s Resp.;Ex. F. Plaintiff argues the Hearings Office did not perform the required follow up with any communication to Plaintiff, in violation of the regulations. Plaintiff argues that "[t]he error was on the part of the Agency in accepting the request for hearing without informing [her] of the need for a "good cause" statement and in not providing the ALJ with the "good cause" statement for review prior to his finding that she did not have 'good cause.'" *Id.* at 5. Plaintiff also argues the ALJ further compounded the error by not notifying her of the need for a good cause statement.

Plaintiff "is requesting simply that the case be remanded for a full and fair hearing." Pl.'s Resp. at 5. According to Plaintiff, good cause is shown "if the claimant shows that the

premise on which the ALJ based the dismissal order was erroneous." *Id*. at 6 (citing HALLEX 1-2-4-10(B)("Generally, good cause would be shown if the claimant shows that the premise on which the ALJ based the dismissal order was erroneous." )).

Plaintiff also cites to Social Security Ruling 91-5p to support her position. Plaintiff contends that as a result of the severity of her cognitive impairment, she has not been able to independently understand procedures, complete forms, or even remember deadlines. *Id.* at 8. Social Security Ruling 91-5 requires that in determining whether good cause exists for failing to timely request an ALJ hearing, the agency will consider, *inter alia*, the circumstances and whether the agency's action misled the claimant. SSR 91-5p, 1991 WL 208067.

Social Security Ruling 91-5p states in relevant part:

When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

<u>The claimant will have established mental capacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review</u>.

In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:

\* \* \* \* \*

— any mental or physical condition which limits the claimant's ability to do things for him/herself.

6

> If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case.  <u>The adjudicator will resolve any reasonable doubt in favor of the claimant.</u>
>
> \*\*\*
>
> EFFECTIVE DATE: <u>The right to establish good cause for missing the deadline to request review is a longstanding SSA policy.  SSA will apply this policy to any case brought to its attention</u>.

SSR 91-5p, 1991 WL 208067 at \*1-\*3 (emphasis added).

Finally, Plaintiff argues that she has raised a colorable constitutional claim based on her mental incapacity.  Plaintiff argues that due process requires that the case be remanded so she may have a full and fair hearing.  Plaintiff contends her "claim for disability is predicated, in large part, on her severe cognitive and psychiatric disorders." *Id.* at 8.  In fact, her subsequent application was granted partly on that basis.

As part of her second claim, Dr. Eligio Padilla performed a consultative examination. *Id.*; Ex. G.  Dr. Padilla performed full testing and reviewed her medical and psychiatric records. Dr. Padilla opined Plaintiff had borderline intellectual functioning with a low Full Scale IQ (75). Dr. Padilla also  diagnosed Plaintiff with Major Depressive Disorder, Recurrent and Severe. Based on his evaluation, Dr. Padilla opined that Plaintiff was (1) markedly limited in the ability to understand and remember instructions; (2) markedly limited in her ability to carry out instructions; (3) moderately limited in her ability to attend and concentrate (4) markedly limited in her ability to work without supervision; (5) markedly limited in her ability to interact with the public; (6) moderately limited in her ability to interact with coworkers; (7) moderately limited in her ability to interact with supervisors; and (8) markedly limited in her ability to adapt to changes in the workplace.

"Several courts have held that a claimant who has a mental disability raises a colorable due process claim by alleging that the disability prevented the claimant from proceeding in a timely fashion from one administrative stage to the next." *London v. Apfel*, No. 99-1146, 1999 WL 1244475 at *3 (10th Cir. 1999); *see e.g., Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981)(concluding that where the claimant's mental capacity may have prevented him from pursuing his administrative remedies, a colorable constitutional claim, couched in denial of due process, was established); *see also Brown v. Shalala*, 1994 WL 413929 (D.Kan. July 27, 1994)(finding a colorable constitutional claim was stated due to mental impairment).

Based on the facts of this case, the Court finds that Plaintiff has stated a colorable constitutional claim.  Plaintiff contends that because of her mental condition she did not understand the notice she received and thus failed to timely file her request for hearing and that a denial of benefits based upon this failure is a denial of due process.  "This type of contention seems peculiarly apropos in the context of Social Security disability benefit proceedings in which, as here, the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand or act upon notice of available administrative procedures."  *Parker*, 644 F.2d at 1203.  Accordingly, Defendant's Opposed Motion to Dismiss Complaint and Memorandum in Support is **DENIED.**

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Opposed Motion to Dismiss Complaint and Memorandum in Support **[Doc. No. 13]** is **DENIED.**

**IT IS FURTHER ORDERED** that this matter is remanded to allow the ALJ the opportunity to review Plaintiff's good cause statement and to determine whether good cause exists, and, if good cause exists, to proceed to hearing on the merits of Plaintiff's claim.

**DON J. SVET**
**United States Magistrate Judge**